Filed 8/26/21  In re I.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re I.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076397 |
| Plaintiff and Respondent, | (Super.Ct.No. J269448) |
| v. | OPINION |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant J.G. (father) argues the juvenile court improperly delegated to his son's legal guardians the authority to decide if he could visit his son. We disagree and affirm.

PROCEDURAL BACKGROUND

On February 8, 2017, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of I.G. (the child), who was seven years old at the time.[1] The petition alleged that the child came with section 300, subdivisions (b) (failure to protect), and (g) (no provision for support). Specifically, the petition alleged the child's mother, M.G (mother),[2] had a history of failing to provide necessary medical treatment for the child, who had serious and chronic medical conditions. It further alleged that she was unable to provide a suitable plan of ongoing care and support for the child, that she had a substance abuse problem and untreated mental health issues, and that she and father had domestic violence issues. As to father, the petition alleged that he knew or should have known mother had substance abuse issues but failed to protect the child, and that he was incarcerated and could not arrange for care of the child.

The court held a detention hearing on February 9, 2017. Father appeared in custody, represented by counsel. Mother said father was the child's biological father. The court detained the child in foster care.

---

[1] Petitions were apparently also filed regarding the child's siblings, J.G. and D.G.; however, they are not subjects of this appeal.

[2] Mother is not a party to this appeal.

2

The social worker filed a jurisdiction/disposition report and recommended that the court sustain the petition, declare the child a dependent, and provide reunification services to mother, but not father since he was going to be incarcerated for the next four years. Mother reported that father had been in jail since a domestic violence incident in 2017. The social worker met with father at his detention center, and he said he "signed a four year contract," so he will be in jail for a "long time."

The court held a jurisdiction hearing on April 19, 2017, and father did not appear since he was in custody; however, he was represented by counsel. The court sustained the petition, declared the child a dependent, and ordered services for mother but not father. It ordered supervised visitation for mother once a week for two hours, but no visitation for father.

The social worker filed a six-month status review report and recommended that the court continue mother's services. The social worker reported that the child was legally blind, had hearing and speech deficiencies, an intellectual disability, and language impairment. He was doing well in his foster home and was having supervised visits with mother. The court held a hearing on October 19, 2017, and continued mother's services.

The social worker filed a 12-month status review report and recommended services to continue. The court held a hearing on March 29, 2018, continued mother's services, and ordered her visits to be unsupervised.

The social worker filed an 18-month status review report and recommended that mother's services be terminated because she did not have adequate housing and lacked the support system needed to meet the child's special needs. The social worker

3

recommended the plan of return to mother by information packet, with CFS working with her to find housing. The court held a hearing on August 7, 2018, and adopted the recommended findings and orders. It then set a permanency planning review hearing for February 7, 2019.

The social worker filed a report and recommended the permanent plan of placement in foster care with legal guardianship as the goal. Mother had not been able to find suitable housing. The court held a hearing on February 7, 2019, adopted the social worker's recommendations, and continued mother's unsupervised visits.

The court held a permanency planning review hearing on August 7, 2019. The plan remained the same, and the court set another hearing for February 7, 2020.

The social worker filed a report stating that mother failed random drug tests, and her visits were changed from unsupervised to supervised. Mother began threatening the social worker and the caregivers. The court held a hearing on February 7, 2020. The social worker was present and indicated that father was deported and had not had any visits with the child. The court adopted the social worker's recommendations, which included the plan of legal guardianship with the child's current caregivers.

The social worker filed a status review report and recommended that the court set a section 366.26 hearing. The court set a section 366.26 hearing for December 7, 2020.

The social worker filed a section 366.26 report and recommended that the court appoint the child's current caregivers as legal guardians. The social worker reported that mother was having weekly supervised phone visits with the child, but then resumed in-person supervised visits. Mother began to threaten that she had evidence the caregivers

4

had altered photos of the child and accused the social worker of lying and interfering with her visits. Because of mother's irrational behavior, the caregivers were willing to comply if the court ordered visits, but they did not want to be involved in arranging or supervising them. Thus, the social worker recommended that, if the court ordered continued contact, visits should be arranged and supervised by a professional agency, at mother's expense. The social worker specifically recommended the court order visitation to be in accordance with Judicial Council Forms, form JV 320, which provides for "[a] minimum of one time per month for one hour supervised by a professional monitor." As to father, the social worker reported that he began receiving supervised phone calls with the child. She indicated that he was deported to Mexico, and it was unlikely an in-person visit could be arranged.

At the section 366.26 hearing, father did not appear, and mother appeared by phone. Both were represented by counsel. Mother indicated she wanted to contest the social worker's recommendation and testify regarding visitation. The court said it did not need testimony. It then stated, "As to the visits, [mother] will continue to have visits; and I've included telephone because I understand Dad is out of the country." Mother's counsel said he believed the recommendation was for a paid monitor and asked, "to include maybe a third-party that both the legal guardian and my client would agree to if that's a possibility." The court responded, "Well, I could add that as a possibility 'or agreed delegate.' "

The court then asked if father's counsel wanted to say anything. He said father was currently in Mexico and unable to be present. County counsel asked the court to

5

maintain the visitation order at one time per month. She noted that the section 366.26 report outlined ongoing issues with mother's visits and confirmed that father was only having telephonic contact, with the social worker supervising.

The court concluded, "I will add to the visits [*sic*] order 'or agreed delegate or by telephone' so that Father can continue his visits. [¶] I will make a minimum order of one time a month, and sign the .26 orders granting the guardianship." The court's order thus stated that visitation between the child and mother and father "is scheduled as follows: A minimum of one time per month for one hour supervised by a professional monitor." The court interlineated "or agreed delegate" after "professional monitor," and added, "or by telephone." The court signed the section 366.26 order granting the legal guardianship.

### DISCUSSION

### The Court Did Not Delegate to the Legal Guardians the Authority to Decide Whether Father Could Visit the Child

Father claims the court improperly delegated to the legal guardians the authority to determine whether he could have visits with the child, by predicating his visits on their approval of who could supervise the visits. Thus, he asks us to reverse the visitation order and remand the matter for the court to enter a new order that "clearly preserves" his visitation privileges. Father's claim is without merit.

A. *Relevant Law*

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will

6

remain in effect until they are terminated or modified by the family court." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) "The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citation.] This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated." (*Id.* at p. 1123.) "[T]he juvenile court may delegate to the probation officer or social worker the responsibility to manage the details of visitation, including time, place and manner thereof." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.)

B. *Father Has Forfeited the Issue*

As noted by CFS, father never raised the issue of the improper delegation of authority in the juvenile court or requested the court to modify the visitation order. Thus, he has waived the issue on appeal. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.) Notwithstanding the waiver, father's claim has no merit.

C. *The Court Did Not Improperly Delegate its Authority*

Father claims the court's visitation order improperly delegated judicial authority to the legal guardians to determine the conditions that must exist for the child to have visits, since it predicated visitation on the "agreement" between him and the legal guardians regarding who could supervise visits. He specifically claims "the 'agreed' language of the visitation order vests the legal guardians with an effective veto power regarding visits." The record belies this claim.

In the section 366.26 report, the social worker reported that father began having supervised phone calls with the child. The social worker stated that father was deported

7

to Mexico, and it was unlikely that an in-person visit could be arranged. The social worker further reported that mother was having problems with the legal guardians, and, because of her irrational behavior, they did not want to be involved in arranging or supervising her visits. Thus, the social worker recommended that the court order her visits to be arranged and supervised by a professional agency, at her expense. Accordingly, at the section 366.26 hearing, the court stated, "As to the visits, [mother] will continue to have visits; and I've included telephone because I understand Dad is out of the country." Mother's counsel said he believed the recommendation was for a paid monitor and asked, "to include maybe a third-party that both the legal guardian and my client would agree to if that's a possibility." The court responded, "Well, I could add . . . 'or agreed delegate.' " Thus, the court ordered visitation to be "a minimum of one time per month for one hour supervised by a professional monitor or agreed delegate." The record clearly demonstrates that the "agreed delegate" language that father complains of now applies to mother's visits, not his. Mother proposed that language to the court as an alternative to the requirement that she pay for a professional monitor. Therefore, father's claim that the court delegated the authority to decide whether he could have visits is baseless. The court order specifically included telephone visits for him. Even if the entire order applied to father, there was no improper delegation as the professional monitor selected does not require mutual agreement with the legal guardians or anyone else. The requirement of mutual assent only applies if the parties agree to someone other than a professional monitor. If the parties are unable to agree upon an "agreed delegate," the order defaults to the use of a professional monitor.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

MILLER _____

Acting P. J.

RAPHAEL _____

J.

9